**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| YUAN MEI CORPORATION,<br><br>           Plaintiff,<br><br>    v.<br><br>ALL SEASON POWER LLC, a Texas limited liability company, OPE MARKETPLACE, LLC, a Delaware limited liability company, SNOW JOE, LLC, a New York limited lability company; MECALIUM CO., LTD., a foreign company, WEATHER BRANDS, LLC, a Texas limited liability company, and JOSEPH COHEN, an individual<br><br>           Defendants. | Case No. 6:24-cv-0461<br><br>Patent Case<br><br>JURY TRIAL DEMAND |

**<u>COMPLAINT</u>**

Plaintiff Yuan Mei Corporation (the "Plaintiff") for its complaint against Defendant All Season Power, LLC ("All Season Power"), Defendant OPE Marketplace LLC ("OPE"), Defendant Snow Joe, LLC (the "Snow Joe"), Defendant Mecalium CO., LTD., ("Mecalium"), Defendant Weather Brands, LLC ("Weather Brands"), and Defendant Joseph Cohen ("Mr. Cohen"), hereby alleges as follows:

**<u>VENUE, JURISDICTION AND PARTIES</u>**

1.      Plaintiff is a products manufacturer with its principal place of business located at No. 21, Lane 409, Sec.1, Lu Ho Road Lu Kang, Chang Hua, Taiwan, R.O.C.

2.      Plaintiff innovates and markets industry-leading lawn and garden watering tools, including working with third-parties to meet manufacturing needs for lawn and garden watering tools.

3.     Upon information and belief, All Season is a limited liability company formed in the State of Texas, with its registered Texas agent for service being Corporate Service Company located at 211 E 7th St. Ste 620, Austin, Travis County Texas, and a principal place of business of 240 Madison Ave #800, New York, New York.

4.     Upon information and belief, Snow Joe is a limited liability company formed in the State of New York, with a foreign limited liability company registration in Texas, and a principal place of business at 221 River St #13 Hoboken, New Jersey, 7030.

5.     Upon information and belief, OPE is a limited liability company formed in the State of Delaware, with a principal place of business at 221 River St #13 Hoboken, New Jersey, 7030.

6.     Upon information and belief, Mecalium is a company formed under the laws of Vietnam with a principal place of business at KM39+400 National Highway 5A, Cam Phuc Commune, Cam Giang District, Hai Duong Province, Vietnam. Upon information and belief, Mecalium imports goods including the infringing goods here into the United States which through the stream of commerce reach consumers in the State of Texas and this District, and marks the infringing goods with the relevant brand trademarks of the other Defendants by virtue of a trademark license on information and belief issued by a Texas company under a Texas trademark licensing agreement that covers the Accused Products, which trademark marking is intended to ensure continuity of consumer impression with the products previously manufactured and imported by Plaintiff.

7.     Upon information and belief, Weather Brands is a limited liability company formed in the State of Texas, with its registered Texas agent for service of process being United Corporate Services, Inc. located at 815 Brazos Street, Ste. 500, Austin, Texas, 78701, and a principal place of business of 134 W 29th St. Fl. 4, New York, New York, 10001.

8.      Upon information and belief, Joseph Cohen is a citizen of New York and was the founder, chief executive officer, majority member, and/or sole member of Snow Joe, a member of ASP Owner 1 LLC which is a member of All Season Power which is the sole member of OPE (a setup by virtue of which he owns approximately 40-50% of the corporate structure and through which is also the acting managing member). Upon information and belief, Mr. Cohen is a founder and governing/managing individual of All Season Power and OPE, and made the elections concerning incorporation of and registration of the other Defendants in Texas for the express benefit of operating under the protections and rights afforded by Texas law.

9.      Defendants make, use, sell and offers for sale in the United States and/or imports into the United States the Aqua Joe SJI-OMS16 Indestructible Metal Base Oscillating Sprinkler ("SJI-OMS16") and Aqua Joe SJI-OMS20 Indestructible Metal Base Oscillating Sprinkler ("SJI-OMS20") (collectively with the SJI-OMS16, the "Accused Products"). These products sell millions of dollars per year, with SJI-OMS16 selling monthly a reported 26,000 units on Amazon alone. As intended by Defendants, given the massive outdoor watering market in Texas, a substantial amount of Amazon customers from Texas have purchased these products and had them delivered to Texas, and many have also gone on to review on Amazon specifically how well they work in Texas, for example: "Here in Texas this product saves a lot of my time watering the grass"; "Being in Texas, I use these sprinklers A LOT!"; "It survived 5 months of 90-110 degree whether here in Texas"; "they work perfectly for the design of my yard and in Houston, TX"; "I love these style of oscillating sprinklers…living in rural TX". *See* Ex. C.

10.     This lawsuit is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over Defendants because they have, directly and through their agents and intermediaries, committed acts and continue to commit acts of patent infringement within Texas giving rise to this action and have established minimum contacts with Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Defendants, directly and indirectly at least through agents and intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, making, using, selling, offering to sell, and importing the Accused Products.

13.     Upon information and belief, Defendants regularly conduct business in Texas, including significantly in this District, and purposefully avail themselves of the privileges of conducting business in Texas and this District. In Particular, upon information and belief, Defendants and its agents and intermediaries, make, use, import, offer for sale, sell and/or advertise their products and affiliated services in Texas and this District, including but not limited to sales through their websites and online e-commerce stores Amazon and Shop Pay of the Accused Products where customers regularly leave reviews on Amazon touting the products were ordered for and used at their Texas houses (that is, after being shipped to them in Texas from a Texas warehouse), sufficient to give rise to jurisdiction. Upon information and belief, Defendant has placed and continues to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in the United States, including in Texas and specifically including in this District. Defendants take an active role in the Amazon sales process, and on information and belief the vast majority of their products are sold through Amazon channels, which in Texas include 17 fulfillment and sortation

4

centers, 10 delivery stations, and other facilities. And because a large number of Defendants' products are marketed toward outdoor home watering, Defendants directly aim their sales and marketing efforts at Texas home owners and consumers for use in the Texas sun, as confirmed by *inter alia* the multiple representative reviews listed above.

14.     Upon information and belief, each and all Defendants derive substantial revenue from the sale of infringing products distributed within Texas and expect or should reasonably expect their actions to have consequences in Texas. In addition, on information and belief, each and all Defendants knowingly induce and continue to knowingly induce, infringement of the Asserted Patents within Texas by offering for sale, selling, and contracting with others to market infringing products with the intent to facilitate infringing use of the products by others within Texas and by creating and disseminating product information and other materials providing instruction for infringing use.

15.     The infringement starts with Weather Brands and the trademark licenses it uses to maintain control of the sale and flow of Accused Products. Upon information and belief, the Texas-incorporated Defendant Weather Brands licenses trademarks to the other Defendants for use with the Accused Products, and holds out to the public that the sale of the Accused Products is authorized and done through "A Division of Weather Brands LLC."

301183944



16.     Defendants' infringing activity has led to foreseeable harm and injury to Plaintiff, including damage to Plaintiff's reputation and goodwill.

17.     Venue for these claims is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

18.     Venue is proper in this District under 28 U.S.C. § 1400(b) because, among other things, Defendants have transacted business in this District and have committed acts of infringement in and claim this District as home. For example, on information and belief, Defendant All Season Power is a limited liability company formed in this District and with its Texas registered

agent located in this District. Further upon information and belief, Defendants conduct their business of the distribution of their products both directly and indirectly through their website and the online e-commerce stores Amazon and Shop Pay to the consuming public in this District including through one or more Amazon facilities in this District which include: AUS 2 and STX6 (Pflugerville, TX), AUS 3 (Waco, TX), KAUS, HAU1, DAU1 and DAU2 (Austin), DSX5 (Von Ormy), HSX2 (Windcrest), SAT1 (Schertz), DSX8, KSKF, SAT3 and SAT4, STX7 and UTX5 (San Antonio), DAU7 (Round Rock), and ELP1 (El Paso).

19.     Upon information and belief, Defendants support and market their products to customers and potential customers who reside in this District through various means, including through: sales, their website, and their YouTube Videos. The Accused Products pride themselves as being designed and operated as an online sales model and specialize in online distribution (outside of brick and mortar distribution).

## The Asserted Patents

20.     Plaintiff is owner by written assignment of all right, title and interest in United States Patent No. 7,422,162 and Unites States Design Patent No. D802,715 (the "Asserted Patents"), including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Asserted Patents. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Asserted Patents by Defendants.

## The '162 Patent

21.     United States Patent No. 7,422,162 (the "'162 Patent") is a utility patent entitled "Automatic water inlet switching device for an oscillating sprinkler," and issued September 9, 2008 with the inventor being Plaintiff's employees King Yuan Wang and Shun Nan Lo and the patent assignee being Plaintiff. Plaintiff is the owner of the '162 Patent. The application leading to

7

301183944

the '162 Patent was filed on February 8, 2006. A true and correct copy of the '162 Patent is attached hereto as Exhibit A and incorporated herein by reference. *See* Ex. A. The patent term remains in effect.

## The '715 Patent

22.    United States Design Patent No. D802,715 (the "'715 Patent") is a design patent entitled "Sprinkler," and issued November 14, 2017 with the inventor being Plaintiff's employee Hung-Wen Chen and the patent assignee being Plaintiff. Plaintiff is the owner of the '715 Patent. The application leading to the '715 Patent was filed on May 26, 2016. A true and correct copy of the '715 Patent is attached hereto as Exhibit B and incorporated herein by reference. *See* Ex. B. The patent term remains in effect.

## General Allegations

23.    Plaintiff is a pioneer innovator and manufacturer of lawn and garden watering tools operating since 1978. With the goal of continuously pushing new standards for the lawn and garden industry, Plaintiff commits substantial resources to research and development. Since its first patent issued in 1991, Plaintiff has been awarded in excess of 400 patents covering its various innovations. On information and belief, it holds the most patents of any patent holder for lawn and garden watering tools.

24.    Leveraging its experience in developing and manufacturing lawn and garden watering tools, Plaintiff solicits business partners to provide product needs for, including the manufacturing and white-labeling of lawn and garden watering tools.

25.    Plaintiff's efforts have for many decades now kept it a thriving business that currently employs over 320 people and operates across various commercial channels, including storefronts, e-commerce, wholesale, and corporate partnerships. Plaintiff designs and manufactures its products based out of Taiwan.

301183944

26.    From inception, Plaintiff has carefully cultivated unmistakable design features in its products and packaging. These design features have been used consistently throughout the course of its product lives.

27.    Plaintiff currently has over 500 different lines of products, overwhelmingly presented in a revolutionary and sophisticated presentation and packaging that evidences Plaintiff's commitment to quality and distinctiveness. Because of its innovative packaging and distinctive design, coupled with attention to quality, Plaintiff's products continue to thrive.

28.    Plaintiff's creative achievements have resulted in broad intellectual property protection for Plaintiff's innovations, including registered utility and design patents as well as trademarks and trade dress protection. Because of its success, Plaintiff's innovations are at times the subject of emulation by its competitors, who have attempted to capitalize on Plaintiff's success by imitating Plaintiff's innovative, elegant, and distinctive products and packaging.

29.    One set of these imitators are Plaintiffs' former business partner Snow Joe LLC, and Snow Joe's successor companies in interest All Season Power and OPE. From 2015 and until 2023 Plaintiff manufactured products for Defendants to be white-labeled and sold under Defendants' brand names. To be clear, the Accused Products do not include Plaintiff-manufactured products, as Plaintiff's multiple test purchases have confirmed.

30.    On or about 2015, Defendant Joe Cohen contacted Plaintiff regarding the white-labeling of products from Plaintiff's product catalogue for resale and distribution under the brands Defendants now sell, such as Aqua Joe. The requested products included and utilized Plaintiff's patented technology.

31.    After a May 2017 tradeshow (the National Hardware Show), Defendants Joe Cohen and Snow Joe contacted Plaintiff for the first time regarding the manufacturing and white-labeling

of a 16 hole oscillating sprinkler presented by Plaintiff at a tradeshow. The white-labeled 16-hole oscillating sprinkler were ultimately sold by Defendants Joe Cohen and Snow Joe (the other Defendants' predecessor) as the SJI-OMS-16. Below is a picture of the product from the actual tradeshow, this picture being dated May 10, 2017:



32.     On or about May 2018, Plaintiff contacted Defendants Joe Cohen and Snow Joe for the first time regarding newly designed 20-hole versions of the oscillating sprinkler. The white-labeled 20-hole oscillating sprinkler were ultimately sold by Joe Cohen and Snow Joe (the other Defendants' predecessor) as the SJI-OMS-20.

33.     At no point in the relationship has Plaintiff provided any of the Defendants a license to or other transfer of rights to the Asserted Patents.

34.     During the pendency of Plaintiff and Defendants' relationship, Plaintiff provided Defendants with certain CAD files, such as for the products that Plaintiff manufactured under the scope of the Asserted Patents.

35.     Defendant Snow Joe racked up defaults of nearly $10 million in non-payment for invoiced purchases it actually received and sold, leading Plaintiff in or about fall of 2023 to terminate, having already ceased shipping product to Snow Joe prior to the termination.

36.     Having burnt its bridges to Plaintiff's manufacturing and supply of patented white-label products, Defendants pursued alternative manufacturing and supply of products to mimic and copy Plaintiff's designs so that consumers would not know the difference. Upon information and

belief, despite knowledge of Plaintiff's Asserted Patents, Defendants with no remorse to their outstanding debt to Plaintiff, approached a Vietnamese manufacturer, Defendant Mecalium, to manufacture the Accused Products directly based on visuals, samples, and the confidential CAD files of Plaintiff's previously manufactured products.

37.    Despite knowing of Plaintiff's Asserted Patents, Defendants continue to advertise, promote, and sell the Accused Products with images of products and packaging as manufactured by Plaintiff and covered by the Asserted Patents – such a blatant copy that the product pictures used to advertise are the same pictures of Plaintiff's supplied products from when Snow Joe was selling Plaintiff's manufactured products, although test purchases have confirmed they are not Plaintiff-manufactured products.





38.     As noted, in confirming the infringement prior to bringing suit, test purchases were made of the infringing copycat products off of at least Amazon.com and Plaintiff confirmed they are marked as having been produced by a Vietnamese manufacturer, Defendant Mecalium, and that the products for sale are no longer Plaintiff's prior inventory (which Plaintiff stopped shipping long ago). Defendants continue to import from Vietnam the Accused Products, including 4,031 cartons (CTN) of the infringing SJI-OMS-16 imported through U.S. Customs to the United States as recently as on or about July 2024, and an additional importation on or about August 2024. In fact, based on weight disclosures for SJI-OMS-16 and SJI-OMS-20 import records show the most recent shipments into the United States totaled approximately 90,000 units.

39.     Defendants' Accused Products directly compete with products covered by at least one of the Asserted Patents, that Plaintiff manufactures and white-labels for other paying U.S. customers. Examples of these other Plaintiff-manufactured products sold at retail in the U.S., which are covered by one or more of the Asserted Patents, include the ColorStorm Oscillating Sprinkler, Rock Mountain Goods Turbo Metal Oscillating Sprinkler, Gemplers Metal Oscillating

301183944

Sprinkler, Orgill WWS-L&G YM18051 Lawn and Garden sprinklers, Eden 96213 Lawn & Garden Essential Oscillating Sprinkler, Airthereal Oscillating Sprinkler, Melnor 65148AMZ TurboTek Oscillating Sprinkler, and Vego Turbo Oscillating Sprinkler for brands such as Dramm, Rocky Mountain Farms, Gemplers, Eden, Airthereal, Melnor, and Vego (collectively "U.S. Customers"). In all, Plaintiff has manufactured and sold over 2,000,000 products featuring at least one of the Asserted Patents to U.S. Customers over just the 12 month period from July 2023 through June 2024 (which does not include to any Defendant or their affiliates).

40.     Upon information and belief, Defendants purchase paid advertising to display the Accused Products on at least some of the U.S. Customer's Amazon listings as depicted below, directly diverting many consumers from purchasing the legitimate product they would have otherwise purchased to instead purchasing the infringing Accused Products.

13



Eden 96213 Lawn & Garden Essential Oscillating Sprinkler | Water Sprinkler for Yard,Covers up to 3,600 sq. ft., Heavy Weight Base



41.     Defendants were aware of the Asserted Patents prior to January 2023, at least through communications with Plaintiff regarding Plaintiff's patent portfolios.

## COUNT I
### (Infringement of U.S. Patent No. 7,422,162)

42.     Plaintiff restates and incorporates by reference its allegations in this Complaint as if fully restated in this paragraph.

43.     The '162 Patent discloses inventions related to an automatic water inlet switching device for an oscillating sprinkler. In particular, the '162Patent uses a novel control mechanism for controlling the oscillation of a sprinkler from one side to another as water flows through the control mechanism and to the release point on the sprinkler. One advantage of this particular design is that the sprinkler can oscillate across a wide range, if not all levels, of water pressure.

44.     Plaintiff made test purchases of each of the Accused Products and evaluated them, confirming both infringed the '162 Patent. Defendants have directly, literally under and/or

15

equivalently under the doctrine of equivalents, infringed and are infringing at least one claim of the '162 Patent under 35 U.S.C. § 271(a), by making, using, selling, offering for sale in the United States and/or importing into the United States, without authority, the Accused Products. As set forth herein, the Accused Products meet each and every element of one or more claims of the '162 patent.

45.    Defendants have been and are now directly infringing, literally and/or under the doctrine of equivalents, at least claim 1 of the '162 Patent.

46.    By way of illustration only, the Accused Products, including at least the SJI-OMS16, meet each and every element of claim 1 of the '162 Patent. (*See* Ex. D and Ex. E for full claim charts of the SJI-OMS16 and SJI-OMS20 as related to claim 1 of the '162 Patent).

47.    The SJI-OMS16 is "an oscillating sprinkler" that features "[a]n automatic water inlet switching device for an oscillating sprinkler":





(*See, e.g.*, Aqua Joe SJI-OMS16 Indestructible Metal Base Oscillating Sprinkler | Adjustable Spray Patterns | 3,600 Sq. Ft. Max Coverage (available at https://shopjoe.com/products/sun-joe-sji-oms16-indestructible-steel-base-oscillating-sprinkler-with-adjustable-spray)).

48.     The SJI-OMS16 features "a sprinkle control unit" for driving a "sprinkle means to produce angular swinging movement:





(*See, e.g.,* SJI-OMS16 Indestructible Metal Base Oscillating Sprinkler with Adjustable Spray – Live Demo (available https://youtu.be/2YId0dNlKaU)).

49.    The SJI-OMS16 further features "a blade-equipped gear transmission set" housed in the "control unit" that works with "a water inlet Switching device" including "an operation unit and a movable Swinging seat":

## Product Description

**KEY FEATURES**

Looking for a way to water your garden and lawn with precision and efficiency? Look no further than the Indestructible Metal Base Oscillating Sprinkler from Aqua Joe. With 16 clog-resistant nozzles, this sprinkler allows you to control the width and range of your watering, providing superior coverage of up to 3600 sq ft. Thanks to its sealed, turbo gear-driven unit, you can count on this sprinkler to provide reliable performance, while its extra-large indestructible solid-metal base offers added stability and durability in your yard and garden. And with a built-in clean-out tool, you can easily keep your nozzles clear for years of reliable operation. Whether you're looking to water a small garden or a large lawn, the Indestructible Metal Base Oscillating Sprinkler is compatible with a standard garden hose and can provide coverage up to 70 ft with a maximum pressure of 120 PSI and maximum flow of 6.65 GPM. So why wait? Keep your yard looking lush and beautiful all season long with this precision watering solution - Go With Joe® and Get Equipped®!

18



50.    The SJI-OMS16 further features a "Swinging seat" with "two water stop ends at the bottom thereof" and "opposite to two water outlet ports." In operation of the SJI-OMS16, one of the "water outlet ports being selectively blocked by one of said water stop ends":



301183944



51.     The SJI-OMS16 further features "a concave bounded space" defined by a portion of the top side of the movable swinging seat between two "push faces." The "concave bounded space" receives and holds the "actuation stick." The actuation stick" connects to the "drive rod" to form in total the "operation unit."  As the "drive rod" and the "acutation stick" are connected, when the "drive rod" moves about a pivot point on the  the "operation unit" to one side, the "acutation stick" moves in linked harmony about that pivot point on the "operation unit" to the opposite side. As the operation unit switches from side to side it is limited in position by "a restraint connector," while the connected actuation stick is limited by the "bounded space." Further the "actuation stick" can push against the "push face" to cause the "movable swinging seat" to switch from covering one water outlet to the other, regardless of the water pressure:

301183944





301183944



E.K.

★★★★★ **Aqua Joe SJI-OMS16: The Ultimate Garden Companion for Superior Lawn Care**
Reviewed in the United States on July 10, 2024
Size: 3600 - Square Foot Coverage | Pattern Name: Oscillating Sprinkler | **Verified Purchase**

As a gardening enthusiast who takes immense pride in maintaining a lush, vibrant lawn, I am thrilled to share my experience with the Aqua Joe SJI-OMS16 Indestructible Metal Base Oscillating Sprinkler. After months of searching for the perfect sprinkler that combines durability, efficiency, and ease of use, I can confidently say that this product has exceeded all my expectations.

1. Build Quality and Durability:

The first thing that struck me about the Aqua Joe SJI-OMS16 is its exceptional build quality. The indestructible metal base immediately sets it apart from other sprinklers on the market. Made from heavy-duty materials, this sprinkler feels robust and built to last. The metal base ensures stability, preventing it from tipping over or shifting during operation, even at high water pressures. I have used it extensively on uneven terrain, and it remains steadfast, proving its resilience against wear and tear.

2. Design and Aesthetics:

The sleek and modern design of the Aqua Joe SJI-OMS16 adds a touch of elegance to my garden. Its blue and silver color scheme is visually appealing and blends seamlessly with the natural surroundings. The compact size makes it easy to store when not in use, and the lightweight design allows for effortless portability around the yard.

3. Adjustable Spray Patterns and Coverage:

One of the standout features of this sprinkler is its adjustable spray patterns. The Aqua Joe SJI-OMS16 offers customizable settings that allow me to tailor the watering pattern to suit the specific needs of my lawn. With just a simple adjustment of the sliding tabs, I can control the width and range of the spray, ensuring precise and even coverage. This flexibility is particularly useful for watering different areas of my garden, from narrow flower beds to expansive lawns.

4. Impressive Coverage Area:

With a coverage area of up to 3600 square feet, the Aqua Joe SJI-OMS16 is a powerhouse when it comes to watering large lawns. I have a moderately sized backyard, and this sprinkler easily covers the entire area without needing to be repositioned frequently. The wide oscillation range ensures that every corner of my lawn receives adequate water, promoting healthy and consistent growth.

5. Easy Setup and User-Friendly Operation:

Setting up the Aqua Joe SJI-OMS16 is a breeze. The sprinkler comes pre-assembled, and all I had to do was connect it to my garden hose. The quick-connect system ensures a secure and leak-free connection, and the large, easy-to-turn dial allows for effortless adjustment of the spray pattern. The user-friendly operation means that even someone with minimal experience in gardening can achieve professional-level results.

6. Water Conservation:

In an era where water conservation is crucial, the Aqua Joe SJI-OMS16 stands out as an eco-friendly choice. The precise control over the spray pattern ensures that water is distributed evenly, minimizing wastage. The sprinkler's ability to cover a large area efficiently means I can water my lawn in less time, reducing overall water consumption.

7. Performance and Reliability:

After several months of use, I am thoroughly impressed with the performance and reliability of the Aqua Joe SJI-OMS16. The sprinkler consistently delivers a powerful and even spray, <mark>regardless of water pressure variations.</mark> It has become an essential part of my lawn care routine, and I no longer have to worry about dry patches or overwatering.

(*See, e.g.* Amazon Customer reviews available at: https://www.amazon.com/Sun-Joe-SJI-OMS16-Indestructible-Oscillating/product-reviews/B079C7QBVK/ref=cm_cr_dp_d_show_all_btm?ie=UTF8&reviewerType=all_reviews).



Amazon Customer

★★★★☆ **First 1 failed but customer service was top notch**
Reviewed in the United States on August 15, 2024
Size: 3600 - Square Foot Coverage | Pattern Name: Oscillating Sprinkler | **Verified Purchase**

I bought this because it's metal but the tabs that limit oscillation are plastic. The 2nd time I used it the plastic tabs stopped working to limit the swing. I called customer service and they promptly sent me a replacement. The replacement is working as expected.

<mark>One thing I really like about this sprinkler is that it will oscillate even when the water pressure is turned down low. My previous sprinkler would only oscillate when the water pressure was high.</mark>

[ Helpful ]   |   Report

22

(*See, e.g.* Amazon Customer reviews available at: https://www.amazon.com/Sun-Joe-SJI-OMS16-Indestructible-Oscillating/product-reviews/B079C7QBVK/ref=cm_cr_arp_d_paging_btm_next_2?ie=UTF8&reviewerType=all_reviews&pageNumber=2).

52.    Unsurprisingly, as the original OSI-SMJ-16 and OSI-SMJ-20 as produced by Plaintiff took advantage of Plaintiff's patented technology, the direct rip offs manufactured by a third-party manufacturer similarly feature and thus infringe Plaintiff's '162 Patent. This was by Defendants' design, so that consumers would not notice any difference and such continuity would benefit the Defendants who were looking to offer customers the same product, branded the same, and with the same benefits and features as the Plaintiff-supplied products that Defendants Joe Cohen and Snow Joe had used to sell.

53.    Defendants have directly infringed the '162 Patent, including by making using, selling, offering for sale in the United States, and importing into the United States, products that contain the invention disclosed in the '162 Patent. Neither Defendants nor their agents or related parties have or at any time had authorization or permission to make, sell, offer for sale, or import, these Accused Products that contain the invention disclosed in the '162 Patent.

54.    Specifically, at least Defendants Snow Joe, OPE, and All Season have made for sale and sold via their website and third-party e-commerce platforms, most notably Amazon, the Accused Products, including to consumers in this State and District. At least Defendants All Season and Mecalium have been involved in and coordinated the importation of the Accused Products into the United States, such imported Accused Products reaching consumers in this State and District through the intended stream of commerce and shipping that aimed to put sufficient

quantities of the Accused Product in Texas for quick shipment and same-day-pickup from local

Amazon facilities:





55.    Further, at least Defendant Mecalium has made the Accused Products and sold the

same to at least Defendants Snow Joe, OPE, and All Season. At least Defendant Joe Cohen as a

301183944

managing director of Snow Joe, OPE, and All Season has directed and caused the importation, offering of sale, and sale of the Accused Products to consumers in this State and District. At least Defendant Weather Brands after receiving trademark rights through assignment from Snow Joe, has licensed back trademark rights for use with the Accused Products to the other Defendants, to promote and sell the Accused Products as by or through "A Division of Weather Brands LLC."

56.    Defendants have had knowledge of the '162 Patent from a date no later than the date of the filing of this Complaint, and even prior to January 2023.

57.    Defendants also actively induce and have induced infringement of the '162 Patent under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents, and continue to do so. Specifically, without limit:

(a)    At least Defendants Snow Joe, OPE, and All Season, and each of them, have made for sale and sold via their own accounts on third-party e-commerce platforms, including, the Accused Products, including to consumers in this State and District. At least Defendants Snow Joe, OPE, All Season, and Joe Cohen, and each of them, engaged Defendant Mecalium to manufacture the Accused Products to enter the stream of commerce through an online retail sales model to reach consumers in this State and District.

(b)    At least Defendants All Season, Snow Joe, OPE, and Joe Cohen, and each of them, engaged Defendant Mecalium to import Accused Products into the United States, Texas, and for warehousing a portion ultimately in this District for local sales, thereby reaching consumers in this State and District through the stream of commerce.

301183944

(c)    At least Defendant Mecalium has made the Accused Products and sold the same to at least Defendants Snow Joe, OPE, and All Season, and entered into on information and belief a trademark license with the Texas corporation Weather Brands to allow it to mark the products it supplies to Defendants with Weather Brands' trademarks, for purposes of creating the commercial impression of continuity of their supplied products from prior products supplied by Plaintiff that they copied.

(d)    At least Defendant Joe Cohen as a managing director of Snow Joe, OPE, and All Season has directed and caused the importation, offering for sale, and sale of the Accused Products to consumers in this State and District, in addition to directing the formation of the Texas corporate Defendants herein, for the intention of benefitting from and relying upon the laws and protections of Texas in the distribution of Defendants' Accused Products and other products.

(e)    Further, on information and belief, Joe Cohen had specific knowledge of the high number of Accused Products sold to Texas residents and specifically aims the corporate web of Defendants to take advantage of the Texas market, as well as registered numerous of the corporate Defendants herein in Texas in order to carry on the Defendants' business to take advantage of benefits for Texas corporations offered by the State of Texas (and the greater Austin area), including low taxes, minimal regulations and a pro-business environment.

(f)    At least the Texas-incorporated Defendant Weather Brands, after receiving trademark rights previously held by Snow Joe (including in Aqua Joe), has licensed back trademark rights for use with the Accused Products to the web of corporate

26

Defendants herein, to promote sale of the Accused Products as by or through "A Division of Weather Brands LLC."

58.     Upon information and belief, Defendants direct and/or authorize the Accused Products' manufacturers to make, use, sell, or offer for sale in the United States or import into the United States the Accused Products.

59.     Upon information and belief, Defendants encouraged and facilitated infringement with specific intent and continue to encourage and facilitate infringement with specific intent by, for example, training and teaching their manufacturers to make the Accused Products in a manner that infringes at least one claim of the '162 Patent. For example, Defendants are aware that the features claimed in the '162 Patent are features in the Accused Products and are features included in the Accused Products by Defendants' manufacturers.

60.     Defendants actively induce infringement of the '162 Patent with knowledge and the specific intent to encourage that infringement by, *inter alia,* disseminating the Accused Products and providing promotional materials, marketing materials, training materials, instructions, product manuals, user guides and technical information (including but not limited to the materials and videos identified in this Count of the Complaint) to third parties including but not limited to resellers, distributors, customers, potential customers, and/or other end users of the Accused Products. Those third parties directly infringe the '162 Patent at least by selling, offering to sell, and/or using the Accused Products.

61.     Defendants have been and are now contributing to the infringement of the '162 Patent under 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents, and continue to do so.

62. Upon information and belief, Defendants knew or should have known of the '162 Patent and have acted, and continue to act, in an egregious and wanton manner by infringing the '162 Patent. On information and belief, Defendants' infringement of the '162 Patent has been and continues to be willful and deliberate. Plaintiff is a known pioneer in lawn and garden watering tools with whom Defendants know and have familiarity through extensive prior dealings. On information and belief, Defendants knowingly developed, have sold, sells and offer to sell the Accused Products in an infringing manner that was known to Defendants or was so obvious that Defendants should have known of its infringement.

63. Upon information and belief, despite knowing Defendants' actions constituted infringement of the '162 Patent and/or despite knowing that there was a high likelihood that those actions constituted infringement of the '162 Patent, Defendants nevertheless continued their infringing actions, and continue to make, use and sell the Accused Products after the filing of this Complaint.

64. Defendants' acts of infringement have injured and damaged Plaintiff and will continue to injure and damage Plaintiff.

65. Defendants' actions have caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss or impairment of its ability to exclude others from making, using, selling, offering to sell and importing the inventions of the '162 Patent, loss of goodwill from the consuming public and other third-party resellers of products incorporating the patents, and reputational harm due to inability to control production of the Accused Products. On information and belief, Defendants will continue these infringing acts unless enjoined by this court.

301183944

66.    Plaintiff is entitled to the injunctive relief, in the form set forth in the Prayer for Relief, with monetary relief and the remedies at law being inadequate to remedy Plaintiff's harms, all of which will continue unless and until this Court enjoins and restrains such activities.

67.    Plaintiff is entitled to a finding that Defendants knew of the '162 Patent prior to the filing of this lawsuit.

68.    Plaintiff is entitled to a finding that Defendants infringed the '162 Patent and as a result, Plaintiff is entitled to all monetary relief as made available pursuant to 35 U.S.C. § 284 and to be determined by a jury at trial.

69.    Plaintiff is entitled to a finding that Defendants' infringement of the '162 Patent was willful and deliberate, was objectively reckless due to the high likelihood that their actions constituted infringement of a valid patent, and they knew or should have known of this objectively-defined risk at least because the risk was so obvious. Thus, Plaintiff is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and costs and fees incurred prosecuting this action.

70.    Plaintiff is also entitled to a TRO, preliminary and permanent injunctive relief to avoid irreparable harm from continuing, including: (1) barring Defendants, their agents, successors, and affiliates from making, using selling, offering to sell, and/or importing products incorporating the '162 Patent or technology substantially similar to the '162 Patent; (2) directing U.S. Customs to immediately freeze and hold any importations involving Defendants, their affiliates or agents for products incorporating the '162 Patent or technology substantially similar to the '162 Patent; and (3) directing third-party e-commerce stores and other online and brick and mortar retailers with notice to delist any offerings by Defendants of products incorporating the '162 Patent or technology substantially similar to the '162 Patent and freezing Defendants' Amazon accounts for amounts paid for the Accused Products.

71.    Given the recent and ongoing significant financial troubles of Defendants, and the risk of irreparable harm from a potentially uncollectible judgment, Plaintiff is also entitled to a freeze order sufficient to protect any ultimate judgment.

<u>**COUNT II**</u>
<u>**(Infringement of U.S. Design Patent No. D802,715)**</u>

72.    Plaintiff restates and incorporates by reference its allegations in this Complaint as if fully restated in this paragraph.

73.    Plaintiff owns the design in the '715 Patent, the design is original to Plaintiff and the design features claimed in the '715 Patent are non-functional.

74.    Defendants have infringed and continue to infringe the '715 Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States the Accused Products, which embody the design covered by the '715 Patent.

75.    The '715 Patent discloses inventions related to "[t]he ornamental design for a sprinkler, as shown and described" in the patent. Figures 1 through 7 of the '715 Patent are reproduced below as charted against equivalent views of Defendants' Accused Products.



| SJI-OMS16 | US D802,715 S |
|-----------|---------------|

30



FIG.2

FIG.3

FIG.4

FIG. 5

FIG.6

301183944



FIG. 7

| SJI-OMS20 | US D802,715 S |
|-----------|---------------|



FIG.1

FIG.2

FIG.3

FIG.4

32



76.    An ordinary observer of the Accused Products and Plaintiff's patented design, giving such attention that a sprinkler purchaser usually gives, would find the two designs to be substantially the same. The '715 Patent claims a substantially rectangular product including four identical trapezoid indents in pairs of two and spaced equally apart with a substantially rectangular opening (by which a substantially rod-shaped feature extends across). As shown above, Defendants' design also includes a substantially rectangular shape including four indents in pairs of two and spaced apart with a substantially rectangular opening (by which a substantially rod-shaped features extends across). An ordinary observer would recognize that Defendants' design is

33

substantially the same as the patented design in the '715 Patent. The overall impression of the two designs is substantially the same.

77.    Notably, the infringing products are identical to the predecessor products Plaintiff supplied to Snow Joe prior to terminating their relationship, which were in turn designed to closely copy the '715 Patent's design. In other words, they are a copy of a copy, and even if there were asserted slight differences, they would in no way be a reflection of any design-around efforts, and indeed go to aspects that are not claimed. By way of example, the move from an arched rod-shaped bar down the middle (the arched rod-shaped bar being denoted by dotted lines in the design patent drawings, meaning the arching is not a claimed aspect of the design) to a straight bar was a modification made due to manufacturing considerations to save manufacturing costs, steps, and complications, not for aesthetic reasons, and in any event is shown for reference but not a claimed aspect of the design.

78.    Further, an ordinary observer familiar with the prior art would be deceived into believing the Defendants' design is the same as the design patented in the '715 Patent. Of the many designs for a sprinkler, an ordinary observer would recognize that none of the prior art sprinklers include, for instance a substantially rectangular shape including four indents in pairs of two and spaced apart with a substantially rectangular opening (by which a substantially rod-shaped features extends across) (as patented in the '715 Patent).

79.    Such similarity is unsurprising, as the original OSI-SMJ-16 and OSI-SMJ-20 as manufactured by Plaintiff until 2023 incorporated and closely mirrored the protected '715 Patent. Thus, the direct rip offs manufactured by the manufacturer here (Defendant Mecalium), were even advertised under the same images of the original OSI-SMJ-16 and OSI-SMJ-20 and blatantly infringe Plaintiff's '715 Patent. On information and belief, the design was retained for the express

34

301183944

purpose of assuring consumers that notwithstanding changes in the shipping party, the location of manufacture, or any other details of which they could theoretically take note of, the two products were the exact same products as always. However, by Defendants' deliberate plan, noticing such slight differences in packaging and the like was and is very unlikely for any consumer, given the overwhelming similarities presented to the consumer in the process of buying, receipt of and use of the Accused Products.

80. Defendants have directly infringed the '715 Patent, including by making using, selling, offering for sale in the United States, and importing into the United States, products that are substantially similar to the '715 Patent in the eyes of an ordinary observer, even when educated as to the state of the prior art and any supposedly unprotectible aspects of the design.

81. Defendants have had knowledge of the '715 Patent from a date no later than the date of the filing of this Complaint, and indeed prior to January 2023.

82. Defendants also actively induce and have induced infringement of the '715 Patent under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents, and continue to do so.

83. Upon information and belief, Defendants direct and/or authorize the Accused Products' manufacturers to make, use, sell, or offer for sale in the United States or import into the United States the Accused Products.

84. Upon information and belief, Defendants encouraged and facilitated infringement with specific intent and continue to encourage and facilitate infringement with specific intent by, for example, training and teaching the manufacturers to make the Accused Products in a manner that infringes at least one claim of the '715 Patent. For example, Defendants are aware that the

features claimed in the '715 Patent are features in the Accused Products and are features included by Defendants' manufacturers in the Accused Products.

85.    Defendants actively induce infringement of the '715 Patent with knowledge and the specific intent to encourage that infringement by, *inter alia,* disseminating the Accused Products and providing promotional materials, marketing materials, training materials, instructions, product manuals, user guides and technical information (including but not limited to the materials and videos identified in this Count of the Complaint) to third parties including but not limited to resellers, distributors, customers, potential customers, and other end users of the Accused Products. Those third parties directly infringe the '715 Patent at least by selling, offering to sell, and/or using the Accused Products.

86.    Defendants have been and are now contributing to the infringement of the '715 Patent under 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents, and continue to do so.

87.    Upon information and belief, Defendants knew or should have known of the '715 Patent and have acted, and continues to act, in an egregious and wanton manner by infringing the '715 Patent. On information and belief, Defendants' infringement of the '715 Patent has been and continues to be willful and deliberate. Plaintiff is a known pioneer in lawn and garden watering tools with whom Defendants know and have familiarity. On information and belief, Defendants knowingly developed, have sold, sell and offer to sell the Accused Products in an infringing manner that was known to Defendants or was so obvious that Defendants should have known of the infringement.

88.    Upon information and belief, despite knowing their actions constituted infringement of the '715 Patent and/or despite knowing that there was a high likelihood that its

actions constituted infringement of the '715 Patent, Defendants nevertheless continued their infringing actions, and continue to make, use and sell the Accused Products after the filing of this Complaint.

89.    Defendants' acts of infringement have injured and damaged Plaintiff and will continue to injure and damage Plaintiff, the precise amount of which cannot be ascertained at this time.

90.    Upon information and belief, Defendants' infringement of the '715 Patent has taken place with full knowledge of the patent and is willful, deliberate, and intentional, and therefore gives rise to an exceptional case under 35 U.S.C. § 285.

91.    Defendants' actions have caused Plaintiff to suffer irreparable harm resulting from the loss or impairment of its lawful patent rights and the loss or impairment of its ability to exclude others from making, using, selling, offering to sell and importing the inventions of the '715 Patent, loss of goodwill from the consuming public and other third-party resellers of products incorporating the patents, and reputational harm due to inability to control production of the Accused Products. On information and belief, Defendants will continue these infringing acts unless enjoined by this court.

92.    Plaintiff is entitled to the injunctive relief, in the form set forth in the Prayer for Relief, as any monetary relief and remedies at law are inadequate to fully remedy Plaintiff's harms, unless and until this Court enjoins and restrains such activities.

93.    Plaintiff is entitled to a finding that Defendants knew of the '715 Patent prior to the filing of this lawsuit.

301183944

94.     Plaintiff is entitled to a finding that Defendants infringed the '715 Patent and as a result, Plaintiff is entitled to all monetary relief as made available pursuant to 35 U.S.C. § 284 and to be determined by a jury at trial.

95.     Plaintiff is entitled to a finding that Defendants' infringement of the '715 Patent was willful and deliberate, was objectively reckless due to the high likelihood that their actions constituted infringement of a valid patent, and they knew or should have known of this objectively-defined risk at least because the risk was so obvious. Thus, Plaintiff is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and costs and fees incurred prosecuting this action.

96.     Plaintiff is also entitled a TRO, preliminary and permanent injunctive relief to avoid irreparable harm from continuing, including: (1) barring Defendants, their agents, successors, and affiliates from making, using, selling, offering to sell, and/or importing products incorporating the '715 Patent or technology substantially similar to the '715 Patent; (2) directing U.S. Customs to immediately freeze and hold any importations involving Defendants for products incorporating the '715 Patent or technology substantially similar to the '715 Patent; and (3) directing third-party e-commerce stores and other online and brick and mortar retailers with notice to delist any offerings by Defendants of products incorporating the '715 Patent or technology substantially similar to the '715 Patent and freezing Defendants' Amazon accounts for amounts paid for the Accused Products.

97.     Given the recent and ongoing significant financial troubles of Defendants, and the risk of irreparable harm from a potentially uncollectible judgment, Plaintiff is also entitled to a freeze order sufficient to protect any ultimate judgment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

301183944

a.      Enter a judgment that Plaintiff is the owner of all right, title, and interest in and to the patents-in-suit, together with all the rights of recovery under such patents for past and future infringement thereof;

b.      Enter a judgment that Defendants have infringed each of the Asserted Patents;

c.      Enter a judgment that the Asserted Patents are valid and enforceable;

d.      Enter temporary, preliminary and permanent injunctive relief including all injunctive and any other conduct-based relief identified in this Prayer and the Complaint.

e.      Enjoin Defendants, their parents, subsidiaries, affiliates, agents, servants, employees, attorneys, representatives, successors and assigns, and all others in active concert or participation with them from infringing the Asserted Patents;

f.      Order U.S. Customs to immediately seize and detain any and all importations involving the Defendants and any of the Accused Products or Defendants' other products featuring the technology covered by the Asserted Patents.

g.      Order third-party e-commerce platforms to disable any and all offering pages involving and accounts related to the Defendants and any of the Accused Products or Defendants' other products featuring the technology covered by the Asserted Patents.

h.      Order an award of damages to Plaintiff in an amount adequate to compensate Plaintiff for Defendants' infringement, said damages to include profit disgorgement but be in no event less than a reasonable royalty;

i.      Enter a judgment that the infringement was willful and treble damages pursuant to 35 U.S.C. § 284;

j.      Order an accounting to determine the damages to be awarded to Plaintiff as a result of Defendants' infringement, including an accounting for infringing sales presented

39

through trial and those not presented at trial and award additional damages for any such infringing sales not presented at trial.

k.      Assess pre-judgment and post judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with *inter alia* 35 U.S.C. §284;

l.      Render a finding that this case is "exceptional" and award to Plaintiff its costs, expenses and reasonable attorneys' fees, as provided by *inter alia* 35 U.S.C. § 285; and

m.      Grant such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury of all issues so triable, pursuant to *inter alia* FED. R. CIV. P. 38.

Dated:      September 6, 2024      */s/ Rachel B. Ommerman*
                                   Rachel B. Ommerman
                                   Texas Bar No. 24041631
                                   TROUTMAN PEPPER HAMILTON SANDERS, LLP
                                   600 Peachtree Street NE
                                   Suite 3000
                                   Atlanta, GA 30308
                                   Tel:  470-832-5571
                                   Fax: 404-885-3900
                                   E-Mail: Rachel.Ommerman@troutman.com

                                   *Attorneys for Plaintiff*
                                   *YUAN MEI CORPORATION*

301183944